LINCOLN V. HORTON (SBN 165238)
HORTON VILLAGE LAW GROUP, APC
lhorton@hortonvillagelaw.com
16236 San Dieguito Road, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Telephone: 858.832.8685

Attorneys for Plaintiffs CHEAP EASY ONLINE TRAFFIC
SCHOOL; BORNA MOZAFARI AND MARLA KELLER
AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC
SCHOOL PENSION PLAN; BORNA MOZAFARI AS
TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT
SHARING PLAN; EASY ON LINE TRAFFIC
SCHOOL.COM, INC.; MARLA KELLER AS TRUSTEE
FOR THE MARLA KELLER PENSION PLAN AND
MARLA KELLER 401(K) PLAN

# UNITED STATE DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| CHEAP EASY ONLINE TRAFFIC SCHOOL; BORNA MOZAFARI AND MARLA KELLER AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN; BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN; EASY ON LINE TRAFFIC SCHOOL.COM, INC.; MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER PENSION PLAN AND MARLA KELLER 401(K) PLAN | Case No. **'16 CV 2644 WQHDHB** |
|---|---|
| | **COMPLAINT FOR DAMAGES** |
| | **1. BREACH OF FIDUCIARY DUTIES ERISA § 404(A)(1), 29 U.S.C. 1104(A)(1)** |
| Plaintiffs, | **2. BREACH OF CONTRACT** |
| | **3. PROFESSIONAL NEGLIGENCE** |
| v. | **4. NEGLIGENCE** |
| | **5. FRAUD** |
| PETER L. HUNTTING & CO., INC.; SMI PENSIONS;  SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; ECONOMIC GROUP PENSION SERVICES GROUP, INC.; and DOES 1 to 100, inclusive, | **6. NEGLIGENT MISREPRESENTATION** |
| Defendants. | |

1

Plaintiffs CHEAP EASY ONLINE TRAFFIC SCHOOL; BORNA MOZAFARI AND MARLA KELLER AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN; BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN; EASY ON LINE TRAFFIC SCHOOL.COM, INC.; and MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER PENSION PLAN AND MARLA KELLER 401(K) (singularly "Plaintiff" and collectively "Plaintiffs") bring this action against PETER L. HUNTTING & CO., INC.; SMI PENSIONS; SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; ECONOMIC GROUP PENSION SERVICES, INC.; and DOES 1 through 100 (singularly "Defendant" and collectively "Defendants"), and allege as follows:

## THE PARTIES

1.   Plaintiff CHEAP EASY ONLINE TRAFFIC SCHOOL ("CHEAP") is a California Corporation, which hired Defendant PETER L. HUNTTING & CO, INC. to create the defined benefit plan CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN ("CHEAP PENSION PLAN"), and the CHEAP EASY ON-LINE PROFIT SHARING PLAN ("CHEAP PROFIT SHARING PLAN"), and is the sponsor of both Plans.

2.   Plaintiffs BORNA MOZAFARI and MARLA KELLER AS TRUSTEES FOR THE CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN are individuals and trustees for the CHEAP PENSION PLAN.

3.   Plaintiff BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN is an individual and the trustee of the CHEAP PROFIT SHARING PLAN.

4.   Plaintiff EASY ON LINE TRAFFIC SCHOOL.COM, INC. is a California Corporation, which hired Defendant PETER L. HUNTTING & CO, INC. to create the defined benefit plan MARLA KELLER PENSION PLAN ("KELLER PENSION PLAN"), and the MARLA KELLER 401K PLAN ("KELLER 401K PLAN"), and is the

2

1   sponsor of both Plans.

2   5.   Plaintiff MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER

3   PENSION PLAN is an individual and trustee of the KELLER PENSION PLAN.

4   6.   Plaintiff MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER 401K

5   PLAN is an individual and trustee of the KELLER 401K PLAN.

6   7.   The CHEAP PENSION PLAN, CHEAP PROFIT SHARING PLAN, KELLER

7   PENSION PLAN, and KELLER 401K PLAN will be referred to collectively within this

8   complaint as the "PLANS," and individually in the singular, "PLAN."  The CHEAP

9   PENSION PLAN and the KELLER PENSION PLAN will also be referred to collectively

10   as the "PENSION PLANS."

11   8.   Defendant PETER L. HUNTTING & CO., INC. ("HUNTTING") created,

12   administered and advised Plaintiffs regarding the PLANS until some time after the death

13   of its principal PETER L. HUNTTING.

14   9.   Defendant SHEFFLER CONSULTING ACTUARIES INC. ("SCA") was at all

15   times the actuary that advised Plaintiffs regarding the PLANS.

16   10.  Defendant SMI PENSIONS ("SMI") is the successor to HUNTTING for both

17   assets and liabilities of HUNTTING, as well as the successor administrator who advised

18   Plaintiffs regarding the PLANS.

19   11.  SMI merged with HUNTTING and SCA soon after the death of PETER L.

20   HUNTTING, and each of the companies assumed joint responsibility for the liabilities of

21   the others.

22   12.  Defendant ESTATE OF PETER L. HUNTTING ("ESTATE") is the estate of

23   PETER L. HUNTTING, the deceased principal of HUNTTING.  Plaintiffs proceed

24   against ESTATE pursuant to California Probate Code §§ 550 and 554, for purposes of

25   pursuing insurance proceeds, only; subject to later amendment upon identification of any

26   personal representative of the ESTATE.

27   13.  Defendant MIKE EDWARDS ("EDWARDS") was a HUNTTING

28   employee/principal, then an SMI employee/principal, who participated in the

3

administration of the PLANS, and provided advice to Plaintiffs regarding the PLANS.

14.   Defendant WILLIAM J. SHEFFLER is the principal of SCA and SMI, which succeeded and merged with HUNTTING.

15.   Defendant ECONOMIC GROUP PENSION PLANS, INC. merged with SMI, and assumed joint responsibility for SMI's liabilities.

16.   Defendants DOES 1 through 100, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiffs, and whose true capacities, whether as individuals, corporations, partnerships, joint venturers and/or associations, are also unknown to Plaintiffs, and when such true names are ascertained, the complaint will be amended to include those names. Plaintiffs are informed and believe and thereon allege that, whenever and wherever in this complaint, any Defendants are the subject of any charging allegations by Plaintiffs, said Does are also responsible in some manner for the events and happenings, and it shall be deemed that said Defendants, DOES 1 through 100, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiffs.

17.   At all times pertinent herein, Defendants, and each of them, were the agents, servants, and employees of each of the other Defendants herein, and at the same time and place of the events hereinafter described, were acting within the course and scope of said agency and employment with the permission and consent of the other Defendants and each of them.  Defendants are, and each of them is, successors in interest to the other Defendants.  Defendants are, and each of them is, the alter ego of the other Defendants, and Defendants are essentially the extensions of each other, and jointly responsible for the liabilities of each of the others.   As a result, all causes of action asserted hereunder are asserted as to each and every Defendant.

**JURISDICTION**

18.  Jurisdiction of this Court arises pursuant to 28 U.S. Code § 1331 because Federal questions are involved; as well as pursuant to ERISA § 502(e)(1) and 29 U.S.C. § 1132(e)(1).

COMPLAINT FOR DAMAGES

19.   Venue is proper under ERISA § 502(e)(2) and 29 U.S.C. § 1132(e)(2) because the PLANS are administered, the breaches took place, and Defendants reside or may be found, in this district.

## GENERAL ALLEGATIONS

20.   Plaintiffs retained HUNTTING to create and administer the KELLER PENSION PLAN and the KELLER 401K PLAN in 2004, the CHEAP PENSION PLAN in 2005, and the CHEAP PROFIT SHARING PLAN in 2012.

21.   Plaintiffs are not experts regarding defined benefit plans, profit sharing plans, or 401K plans.  PETER L. HUNTTING represented to Plaintiffs that he and HUNTTING and his team (SCA, SHEFFLER, EDWARDS) were experts in defined benefit plans, profit sharing plans, and 401K plans, when initially selling his services, and throughout his relationship with Plaintiffs.

22.   On or about December 28, 2004, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the KELLER PENSION PLAN, and the KELLER 401K.  HUNTTING also instructed Plaintiffs regarding the amount of the initial contributions to fund each PLAN, and the required offsetting employee compensation to be paid.

23.   HUNTTING created the KELLER PENSION PLAN and KELLER 401K PLAN so that each had an initial effective date of January 1, 2004.

24.   On or about December 23, 2005, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the CHEAP PENSION PLAN.  HUNTTING also instructed Plaintiffs regarding the amount of the initial contribution to fund the PLAN, and any required offsetting employee compensation to be paid.

25.   HUNTTING created the CHEAP PENSION PLAN so that it had an initial effective date of January 1, 2005.

COMPLAINT FOR DAMAGES

26.   On or about December 14, 2012, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the CHEAP PROFIT SHARING PLAN.  HUNTTING also instructed Plaintiffs regarding the amount of the initial contribution to fund the PLAN, and any required offsetting employee compensation to be paid.

27.   HUNTTING created the CHEAP PROFIT SHARING PLAN so that it had an initial effective date of January 1, 2012.

28.   From the inception of each of the PLANS, HUNTTING retained SCA and SHEFFLER to provide actuarial services for the PLANS and assist HUNTTING with the administration of the PLANS, and advice to Plaintiffs regarding the PLANS.

29.   Consistent with the contractual obligations owed to Plaintiffs and the PLANS, each year PETER L. HUNTTING for HUNTTING and SHEFFLER for SCA would perform a review of the investment portfolio and performance for the PENSION PLANS, perform actuarial calculations, and determine the appropriate amount of the annual contributions to the investments for the respective PENSION PLANS, as well as the amount of salary compensation needed to balance the assets and liabilities within the PENSION PLANS.

30.   Plaintiffs relied on HUNTTING's and its team's purported expertise, and each year made the annual employer contributions HUNTTING told Plaintiffs could be made to the investment accounts for the PENSION PLANS, as well as payment of any salary offsets HUNTTING said were needed.

31.   Over the years, Plaintiffs BORNA MOZAFARI and MARLA KELLER (who have been together as a couple over 30 years, but have been married since December 17, 2014) asked PETER L. HUNTTING about whether if they ever married, the marriage would cause a financial detriment to the PLANS.  Peter L. Huntting told Plaintiffs repeatedly that no financial detriment would occur to the PLANS if Plaintiffs married.

32.   On November 4, 2014, PETER L. HUNTTING of HUNTTING and Plaintiffs

met at PETER L. HUNTTING's invitation to discuss the PENSION PLANS.  No indication was given to Plaintiffs in advance of the meeting that there was any problem with the PENSION PLANS.  However, at the November 4, 2014 meeting, PETER L. HUNTTING informed BORNA MOZAFARI and MARLA KELLER that the PENSION PLANS were both overfunded (PLAN assets exceeded PLAN liabilities), and had to be terminated, immediately.  PETER L. HUNTTING told Plaintiffs that after termination all of the funds in the respective PENSION PLANS had to be rolled over into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, respectively.

33.  Plaintiffs were not aware of the concept of overfunding before the November 4, 2014 meeting with PETER L. HUNTTING, and he did not tell Plaintiffs at that meeting, or any time, the amount of the overfunding of each of the PENSION PLANS.  PETER L. HUNTTING also did not disclose to Plaintiffs that there would be any financial consequences to Plaintiffs or the PLANS due to the overfunding and/or the termination and rollover remedy.  He also did not inform Plaintiffs that non-vested employees would become fully vested and entitled to fully vested distributions as a result of the termination of the PENSION PLANS.  Instead, PETER L. HUNTTING told Plaintiffs that the problem would be fixed by terminating the PENSION PLANS and rolling over all of the proceeds from the PENSION PLANS into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, and that this plan of action needed to be executed, immediately.

34.  Plaintiffs relied upon HUNTTING and its team regarding the need for termination and the remedy, and executed the paperwork that HUNTTING had pre-prepared and presented to them at the November 4, 2014 meeting to begin the termination process.

35.  During the November 4, 2014 meeting, Plaintiffs BORNA MOZAFARI and MARLA KELLER also discussed with PETER L. HUNTTING that they were now contemplating a date to get married, but would only proceed if he confirmed that there were not any financial ramifications or consequences to the PLANS.  He told them at the meeting that the marriage would have no financial consequences to the PLANS.

COMPLAINT FOR DAMAGES

1    Plaintiffs relied upon this representation and prior representations by PETER L.

2    HUNTTING and went forward with their marriage.  Had PETER L. HUNTTING told

3    Plaintiffs that getting married would have an adverse financial effect on the PLANS,

4    Plaintiffs would not have married.

5        36.   On November 4, 2014, PETER L. HUNTTING sent Plaintiffs a letter for each of

6    the PENSION PLANS regarding the overfunding, and his recommendation to terminate

7    the PENSION PLANS and roll them over into the CHEAP PROFIT SHARING PLAN

8    and the KELLER 401K PLAN.  In his letters, PETER L. HUNTTING states, "it appears

9    that your Plan is at a point where it is fully funded and can no longer absorb any more

10   contributions as it is actually over-funded."  Again, he did not mention the amount of the

11   overfunding of each of the PENSION PLANS, which was over one million dollars for

12   each PLAN.  He also did not inform Plaintiffs of excise and income taxes owed for the

13   overfunding, or that non-vested employees would become fully vested and entitled to

14   fully vested distributions as a result of the termination of the PENSION PLANS.

15       37.   On November 5, 2014, PETER L. HUNTTING sent Plaintiffs an email regarding

16   the overfund issue and termination recommendation for the PENSION PLANS.  He did

17   not inform Plaintiffs of the amounts of the overfunding for each of the PENSION

18   PLANS, or the damages and other ramifications to Plaintiffs.

19       38.   After the November 4, 2014 meeting, HUNTTING quickly prepared the

20   remaining termination paperwork for the PENSION PLANS and the Plaintiffs executed

21   that paperwork at HUNTTING's instruction.

22       39.   On December 5, 2014, PETER L. HUNTTING passed on.  Plaintiffs continued to

23   work with HUNTTING's EDWARDS to complete the termination process for the

24   PLANS.  On numerous occasions throughout the process in 2014 and 2015, EDWARDS

25   reiterated PETER L. HUNTTING's advice that the termination of the PENSION PLANS

26   needed to be done.  EDWARDS never revealed the amount of the overfunding of the

27   PENSION PLANS.  EDWARDS never informed Plaintiffs of any consequences, taxes or

28   penalties associated with terminating the PENSION PLANS and rolling over all of the

8

1    proceeds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K.

2        40.   In communications with EDWARDS about the terminations of the PENSION

3    PLANS, after PETER L. HUNTTING's death, Plaintiffs relayed to EDWARDS that they

4    were getting married on December 17, 2014, and were doing so, specifically, in reliance

5    upon PETER L. HUNTTING's advice that the marriage would not have adverse financial

6    impact on the PLANS.  EDWARDS failed to tell Plaintiffs that the marriage would cause

7    a financial consequence to the PLANS.

8        41.   In mid-December 2014, almost 2.4 million dollars was rolled over from the

9    terminated KELLER PENSION PLAN to the KELLER 401K.

10       42.   After the KELLER PENSION PLAN termination and rollover, EDWARDS and

11   HUNTTING continued to recommend the termination of, and work on the termination

12   paperwork for, the CHEAP PENSION PLAN.

13       43.   On March 6, 2015, EDWARDS informed Plaintiffs that he was now with SMI.

14       44.   On or about May 14, 2015, Plaintiffs met with SHEFFLER and EDWARDS

15   about the termination of the PENSION PLANS.  SHEFFLER and EDWARDS continued

16   to recommend the termination of the PENSION PLANS as an appropriate fix, but did not

17   reveal the amount of the overfunding of the PENSION PLANS, provide other potential

18   options, or explain the financial consequences which the terminations and rollover would

19   cause.

20       45.   On or about July 7, 2015, as supplemented with later issued dividends, a total of

21   almost 3 million dollars was rolled over from the CHEAP PENSION PLAN to the

22   CHEAP PROFIT SHARING PLAN.

23       46.   On October 14, 2015, EDWARDS sent an email to Plaintiffs in which there is a

24   vague reference "additional benefits" needed in the CHEAP PENSION PLAN to pass

25   IRS non-discrimination testing, and the need to issue "revised reports" to the IRS

26   regarding the "additional benefits."  The "additional benefits" were Qualified Non-

27   Elective Benefits ("QNECs"), the payment of which was necessitated by the controlled

28   group created by the marriage of the Plaintiffs BORNA MOZAFARI and MARLA

9

KELLER, which Plaintiffs had previously been informed by Defendants would not cause any financial detriment to the PLANS.  Plaintiffs did not understand the reference to these "additional benefits" in the email, but since EDWARDS claimed it was "good news," they were not concerned.

47.  On December 18, 2015, SMI employee Elizabeth Buckles sent Plaintiffs an email wherein for the first time in any communication from Defendants, Plaintiffs were informed of an amount of a PENSION PLAN overfund (per Defendants).  The amount of the overfunding in the CHEAP PENSION PLAN rolled over to the CHEAP PROFIT SHARING PLAN was stated by Ms. Buckles to be "$902,803."  Ms. Buckles also informed Plaintiffs in this email that there would be at least a "20% excise tax" owed on this overfunded amount, if a "50% excise tax" could somehow be avoided.  There was no mention by Ms. Buckles of the additional income taxes, interest and penalties that would also be owed on the overfunding for each PLAN.

48.  Plaintiffs were shocked by the information in Elizabeth Buckle's December 18, 2015 email, and contacted Ms. Buckles by phone, during which she informed Plaintiffs that the MARLA KELLER PENSION PLAN that had been rolled over into the MARLA KELLER 401K was also overfunded by over $900,000.

49.  Plaintiffs contend that each of the PENSION PLANS was overfunded by over a million dollars.  As instructed by Defendants, 100% of the funds in each PENSION PLAN, including all of the overfunding for each, was rolled over into the CHEAP PROFIT SHARING PLAN and the MARLA KELLER 401K, upon the termination of the PENSION PLANS.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTIES**

**ERISA 404(a)(1), 29 U.S.C. § 1104(a)**

(Against All Defendants)

50.  Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 49 above, as though fully set forth herein.

51.   Plaintiffs are entitled to bring this action as fiduciaries for the PLANS pursuant to 29 U.S.C. 1132(a)(2).

52.   Defendants are each fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and 26 U.S. Code §4975(e)(3) because each exercised discretionary authority and control in the administration and management of the PLANS; the creation of the annual reviews of the PLANS, and evaluation of the investments of the PLANS; in determinations regarding the appropriate amount of annual employer contributions for the investments of the PLANS and salary offsets needed; and in the determination that the PENSION PLANS must be terminated and rolled over into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, respectively.

53.   ERISA imposes strict fiduciary duties upon Defendants as plan fiduciaries. ERISA § 404(a)(1)(B) and 29 U.S.C. § 1104(a)(1)(B) states, in relevant part, that a plan fiduciary must discharge his/its duties with "care, skill, prudence and diligence…"

54.   ERISA § 409(a) and 29 U.S.C. § 1109(a) state, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to made good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate…

55.   Defendants breached their fiduciary duties, to Plaintiffs and the PLANS, to act with "care, skill, prudence and diligence…" by continuing to instruct Plaintiffs to make six-figure annual contributions to the pension PLAN for several years despite the PENSION PLANS being overfunded.

56.   Defendants breached their fiduciary duties to Plaintiffs and the PLAN by failing to adequately assess the PLAN's investments, performing incorrect actuarial calculations or failing to perform such calculations, not taking into account pertinent tax codes and statutory sections when advising Plaintiffs about the PLAN, all resulting in improper advice to Plaintiffs and overfunding of the PENSION PLANS in an amount over one

1   million dollars for each PLAN.

2      57.   Defendants breached their fiduciary duties to Plaintiffs and the PLANS by

3   attempting to cover up the amount of the overfunding of the PENSION PLANS, the

4   consequences of the overfunding, and then instructing Plaintiffs erroneously that the

5   termination of the PENSION PLANS and rolling the proceeds over into the CHEAP

6   PROFIT SHARING PLAN and the KELLER 401K would correct the overfund issue, in

7   an attempt to cover up their own liabilities.  Instead, the termination of the PENSION

8   PLANS and rollover into the CHEAP PROFIT SHARING PLAN and the KELLER

9   401K PLAN created excise and income tax damages in the many hundreds of thousands

10   of dollars for each PLAN for violation of Internal Revenue Code § 4980(d)(2) for

11   Qualified Replacement Plans, and made it impossible to correct and absorb the

12   overfunding from each PENSION PLAN within the seven years time period allowed by

13   the IRS.  Termination of the PENSION PLANS also made non-vested employees fully

14   vested, requiring full distributions of benefits to employees who would not have been

15   entitled to such benefits absent Defendants' erroneous advice to terminate the PENSION

16   PLANS.

17      58.   Defendants breached their fiduciary duties to Plaintiffs by failing to advise them

18   that their marriage creating a controlled group would cause damages to the PLANS in the

19   form of a responsibility for payment of Qualified Non-Elective Contributions ("QNECs")

20   by KELLER 401K for CHEAP employees.

21      59.   As a result of Defendants' breaches, and others which will be established

22   according to proof, Plaintiffs have and will continue to incur damages, including payment

23   of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts

24   in violation of Qualified Replacement Plan requirements and allowances, in amounts

25   according to proof but exceeding several hundred thousand dollars for each PLAN;

26   payment of extra QNECs as a result of the controlled group; distributions to employees

27   who became fully vested as a result of the termination of the PENSION PLANS; new

28   PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs;

court costs; and related damages.

60.   Additionally, Plaintiffs are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

61.   Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against All Defendants)

62.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 61 above, as though fully set forth herein.

63.   Plaintiffs contracted with Defendant HUNTTING on or about December 28, 2004, December 23, 2005, and December 14, 2012 to create, manage and administer the PLANS in compliance with the documents for each PLAN and applicable statutes and code sections.  Among HUNTTING's duties owed Plaintiffs and the PLANS pursuant to the agreements were to annually review the PENSION PLANS' investments, in conjunction with the PENSION PLANS' documents and applicable tax statutes; perform actuarial calculations to determine and instruct Plaintiffs regarding the appropriate annual employer contribution to the investments for each of the PENSION PLANS, and any salary/compensation offsets needed; and advise Plaintiffs regarding the termination of the PLANS.

64.   Defendant HUNTTING breached its duties to Plaintiffs and the PLANS by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the PENSION PLANS for years after the PENSION PLANS became overfunded.

65.   Defendant HUNTTING breached its duties to Plaintiffs and the PLAN by instructing Plaintiffs to terminate the PENSION PLANS due to the overfunding created

13

by Defendants and rollover all proceeds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K in violation of the Qualified Replacement Plan requirements codified in 26 U.S.C. § 4980(d)(2); failing to advise Plaintiffs of the excise tax, income tax, penalties, interest, and employee vesting consequences of termination of the PENSION PLANS; and erroneous advice about the purported non-effect of Plaintiffs' marriage on the PLANS.

66. Plaintiffs contracted with SMI on or about May 14, 2015 to manage and administer the PLANS in compliance with the documents for each PLAN and applicable statutes and code sections and Plaintiffs regarding the PENSION PLANS' terminations and rollovers.

67. SMI breached its duties to Plaintiffs by failing to advise Plaintiffs about the consequences of the termination and rollover plan; failing to advise Plaintiffs to reverse/stop the termination of the PENSION PLANS and rollovers into the CHEAP PROFIT SHARING PLAN and the KELLER 401K in violation of the Qualified Replacement Plan requirements codified in 26 U.S.C. § 4980(d)(2); and failing to advise Plaintiffs of the employee vesting consequences of termination of the PENSION PLANS.

68. Each of the Defendants is the alter ego, agent, servant, or successor to the other Defendants. Therefore, the aforementioned breaches of any Defendant are breaches of all of the Defendants.

69. As a result of Defendants' breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding several hundred thousand dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

70.   Additionally, Plaintiffs are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

71.   Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

### THIRD CAUSE OF ACTION
### PROFESSIONAL NEGLIGENCE

(Against All Defendants)

72.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 71 above, as though fully set forth herein.

73.   Defendants are all professionals in the business of managing, administering, creating and/or performing actuarial services for defined benefit plans, profit sharing plans, and 401K plans, and performed those functions for the Plaintiffs and the PLANS.

74.   Defendants owed duties of care to Plaintiffs and the PLANS to act pursuant to the standard of care for reasonably careful professionals in the retirement and benefit plan industry.  Specifically, Defendants' duties to Plaintiffs included, but were not limited to, proper assessment of the PLANS, their investments, and statutory requirements, and performance of proper actuarial calculations, so as to advise Plaintiffs regarding the appropriate annual employer contribution to the investments for the PLANS and any salary off-sets needed; making sure the PLANS and the funding in each complied with applicable statutes and revenue codes, as well as the PLAN documents; provide proper advice regarding termination of the PLANS, or other appropriate solutions to any problems which arose with the PLANS; and generally, not to cause harm or damages to Plaintiffs and the PLANS by Defendants' acts and omissions.

75.   Defendants breached their duties to Plaintiffs and the PLANS, and fell below the standard of care for reasonably careful professionals in the retirement and benefit plan

1   industry, by continuing to instruct Plaintiffs to make six-figure annual employer

2   contributions to the investments for the PENSION PLANS for years after the PENSION

3   PLANS became overfunded.

4       76.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the

5   standard of care for reasonably careful professionals, by making numerous actuarial

6   calculation errors and not taking into account pertinent statutory code sections such as

7   IRC Section 401(a)(17) in calculating and instructing Plaintiffs regarding the amount of

8   the annual employer contribution to the investments for the PENSION PLANS.

9       77.  Defendants breached their duties to Plaintiffs, and fell below the standard of care

10  for reasonably careful professionals, by advising Plaintiffs that they must terminate the

11  PENSION PLANS because of the overfunding issue caused by Defendants (which was

12  not the proper solution), and rollover all of the balances from the PENSION PLANS into

13  the other PLANS (which violated 26 U.S.C. § 4980(d)(2), and other applicable statutes).

14      78.  Defendants breached their duties to Plaintiffs, and fell below the standard of care

15  for reasonably careful professionals, by failing to advise them that termination of the

16  PENSION PLANS would cause non-vested employees to become fully vested, and

17  entitled to payment of full distributions.

18      79.  Defendants breached their duties to Plaintiffs, and fell below the standard of care

19  for reasonably careful professionals, by failing to advise them of the financial

20  ramifications of their potential marriage, and resulting creation of a controlled group, on

21  the PLANS.

22      80.  Each of the Defendants is the alter ego, agent, servant, or successor in interest to

23  the other Defendants.  Therefore, the aforementioned breaches of any Defendant are

24  breaches of all of the Defendants.

25      81. As a result of Defendants' breaches, and others which will be established

26  according to proof, Plaintiffs have and will continue to incur damages, including payment

27  of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts

28  in violation of Qualified Replacement Plan requirements and allowances, in amounts

COMPLAINT FOR DAMAGES

according to proof but exceeding several hundred thousand dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

82.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

83.   Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

### (Against All Defendants)

84.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 83 above, as though fully set forth herein.

85.   Defendants are all professionals in the business of managing, administering, creating and/or performing actuarial services for defined benefit plans, profit sharing plans, and 401K plans, and performed those functions for the Plaintiffs and the PLANS.

86.   It is foreseeable that harm would be caused to Plaintiffs and the PLANS by Defendants' acts or omissions.  As such, Defendants owed duties of care to Plaintiffs and the PLANS to act pursuant to the reasonable person standard.  Specifically, Defendants' duties to Plaintiffs included, but were not limited to, proper assessment of the PLANS, their investments, and statutory requirements, and performance of proper actuarial calculations, so as to advise Plaintiffs regarding the appropriate annual employer contribution to the PLANS and any salary offsets needed; making sure the PLANS and the funding in each complied with applicable statutes and revenue codes, as well as the

17

plan documents; provide proper advice regarding termination of the PLANS, or other appropriate solutions to any problems which arose with the PLANS; and generally, not to cause harm or damages to Plaintiffs and the PLANS by Defendants' acts and omissions.

87.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the standard of care for a reasonable person, by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the investments for the PENSION PLANS for years after the PENSION PLANS became overfunded.

88.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the standard of care for reasonably careful professionals, by making numerous actuarial calculation errors and not taking into account pertinent statutory code sections such as IRC Section 401(a)(17) in calculating and instructing Plaintiffs regarding the amount of the annual employer contribution to the investments for the PENSION PLANS.

89.  Defendants breached their duties to Plaintiffs by advising Plaintiffs that they must terminate the PENSION PLANS because of the overfunding issue caused by Defendants (which was not the proper solution), and rollover all of the balances from the PENSION PLANS into the other PLANS (which violated 26 U.S.C. § 4980(d)(2), and other applicable statutes).

90.  Defendants breached their duties to Plaintiffs by failing to advise them that termination of the PENSION PLANS would cause non-vested employees to become fully vested, and entitled to payment of full distributions.

91.  Defendants breached their duties to Plaintiffs by failing to advise them of the financial ramifications of their potential marriage, and resulting creation of a controlled group, on the PLANS.

92.  Each of the Defendants is the alter ego, agent, servant or successor in interest to the other Defendants.  Therefore, the aforementioned breaches of any Defendant are breaches of all of the Defendants.

93. As a result of Defendants' breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment

of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding several hundred thousand dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

94.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

95.   Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

**FIFTH CAUSE OF ACTION**

**FRAUD**

(Against all Defendants)

96.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 95 above, as though fully set forth herein.

97.   Defendant HUNTTING, through its principal PETER L. HUNTTING, omitted to tell Plaintiffs both the amount of the PENSION PLANS overfund Defendants had caused, as well as the consequences to Plaintiffs and the PENSION PLANS, during his meeting with Plaintiffs on November 4, 2014, and in subsequent communications (including letters from him dated November 4, 2014 and a November 5, 2014 email), even though, and because, he knew that those facts would be material to Plaintiffs.  At the November 4, 2014 meeting, and in subsequent communications. PETER L. HUNTTING advised Plaintiffs that the overfund problem could be fixed by terminating the PENSION PLANS and rolling over all of the proceeds into the CHEAP PROFIT SHARING PLAN and

19

1   KELLER 401K PLAN, when, in fact, he knew that the representation was false, and

2   intended that the Plaintiffs would rely upon it.  PETER L. HUNTTING made the

3   misrepresentations with the intent to deceive Plaintiffs and induce Plaintiffs' reliance,

4   resulting in extra fees to HUNTTING, and furthering HUNTTING/PETER L.

5   HUNTTING's attempts to avoid litigation, liability, and damage to the reputation of

6   each.

7        98.   Defendant EDWARDS continued the ruse by concealing from Plaintiffs the

8   amount of the overfunding of each of the PENSION PLANS throughout his interactions

9   with them in late 2014 and throughout 2015, including, but not limited to, during the

10   meeting with Plaintiffs and SHEFFLER on or about May 14, 2015, and insisting to

11   Plaintiffs that the termination of the PENSION PLANS and rollover to the other PLANS

12   would fix the problem, even though he knew that the terminations and rollovers would

13   not fix the problem.  EDWARDS also concealed from Plaintiffs that the controlled group

14   caused by their marriage had resulted in damages to the PLANS.  He made the

15   aforementioned statements and omissions knowing the issues were material to Plaintiffs,

16   and with the intent to deceive Plaintiffs, and have Plaintiffs rely upon his

17   misrepresentations.  EDWARDS made the misrepresentations to Plaintiffs to try to avoid

18   litigation, liability, damage to reputation, and justify the fees charged for terminations

19   and rollovers.

20        99.   SHEFFLER on behalf of himself, SCA, and SMI concealed the amounts of the

21   overfunding of the PENSION PLANS, and insisted that the termination and rollover fix

22   was appropriate, knowing that the statements were false, and that the information would

23   be material, during his May 14, 2015 meeting with Plaintiffs and other communications

24   made during the termination and rollover process.  The aforementioned communications

25   and omissions were made by SHEFFLER with the intent deceive Plaintiffs, and have

26   them rely on the statements and omissions, in order to try to avoid litigation, liability, and

27   damage to his reputation and the reputation of his companies, and justify fees charged for

28   the terminations and rollovers.

100.   Defendants conspired with one another to conceal the amount of the overfunding from Plaintiffs, and misrepresent the nature and consequences of the termination and rollover fix, to deceive Plaintiffs, in order to generate fees, avoid liability, and avoid damage to their respective reputations.  Defendants' misrepresentations were made solely for reasons of self-interest, and in complete, callous, malicious, and utter disregard of the consequences to Plaintiffs and the PLANS.

101.   As laypersons with regard to retirement and benefit plans, Plaintiffs reasonably relied upon the intentional misrepresentations of purported experts PETER L. HUNTTING and EDWARDS, on behalf of themselves and HUNTTING, and then SHEFFLER and EDWARDS, on behalf of themselves, SCA and SMI, to continue paying for the services related to the erroneous termination of the PENSION PLANS and rollovers, and Defendants' administration, management, and advice regarding the PLANS.

102.   As a result of Defendants' intentional misrepresentations, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding several hundred thousand dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS; pain and suffering as to the individual Plaintiffs; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

103.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

104.   Plaintiffs seek and are entitled to recover a judgment for damages, according to

COMPLAINT FOR DAMAGES

1  proof, punitive damages, interest, costs of suit, and such other and further relief as the

2  court deems proper.

### SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

(Against all Defendants)

6  105.  Plaintiffs incorporate by reference each and every allegation contained in the

7  paragraphs 1 through 104 above, as though fully set forth herein.

8  106.  Defendants instructed Plaintiffs that six-figure annual employer contributions to

9  the PENSION PLANS were appropriate for several years after the PENSION PLANS

10  could accept no more funding because, for each, the assets exceeded the obligations.

11  107.  Defendants failed to inform Plaintiffs that if they married, the marriage and the

12  resulting controlled group would have a detrimental financial impact on the PLANS,

13  including the requirement of payments of additional QNECs.

14  108.  Defendants instructed Plaintiffs to terminate the PENSION PLANS and rollover

15  all of the funds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, and

16  that the termination and rollover fix would remedy the overfund issue without damages to

17  Plaintiffs.

18  109.  Defendants intended that Plaintiffs rely upon the above representations and

19  omissions.

20  110.  Defendants knew or should have known at the time that they made the above

21  statements or omissions, that the statements or omissions were false.  Defendants should

22  have known long before they informed Plaintiffs that the PENSION PLANS were

23  overfunded; that the controlled group which would result from marriage by Plaintiffs

24  would cause financial consequences to Plaintiffs and the PLANS; and that rather than

25  fixing the problem, the termination of the PENSION PLANS and rollover of all of the

26  funds to the other PLANS would cause Plaintiffs many hundreds of thousands of dollars

27  in damages (or more, according to proof) in excise taxes, income taxes, interest and

28  penalties for violation of 26 U.S.C. 4980(d)(2), among other statutes, as well as make

22

non-vested employees fully vested and entitled to full distributions from the terminated PENSION PLANS.

111.   Plaintiffs reasonably relied upon the representations of Defendants HUNTTING, ESTATE and EDWARDS about annual employer contributions, and the lack of impact of Plaintiffs' marriage on the PLANS, because Plaintiffs are laypersons with regard to retirement and benefit plans and Defendants were professed experts hired to administer, manage and advise Plaintiffs regarding the PLANS.   Plaintiffs reasonably relied upon the representations and omissions of Defendants HUNNTING, PETER L. HUNTTING ("ESTATE"), EDWARDS, SHEFFLER, SCA and SMI regarding the erroneously asserted appropriateness of the instructed termination and rollover fix because Plaintiffs are laypersons with regard to retirement and benefit plans and Defendants were professed experts hired to administer, manage and advise Plaintiffs regarding the PLANS.

112.   As a result of Defendants' negligent misrepresentations, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the excess rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding several hundred thousand dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS; pain and suffering as the individual Plaintiffs; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

113.    Additionally, Plaintiffs have been damaged and are entitled to recover fees paid Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

114.   Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, interest, costs of suit, and such other and further relief as the court deems proper.

1    WHEREFORE, Plaintiffs pray for judgment in its favor and against Defendants

2  for the following:

3           1.  Damages according to proof at trial;

4           2.  Pain and suffering;

5           3.  Punitive damages;

6           4.  Attorneys' and experts' fees and costs per ERISA §§ 409(a), 502(g) and 29

7               U.S.C. §§ 1109(a), 1132(g);

8           5.  Prejudgment and post-judgment interest;

9           6.  Costs of suit;

10          7.  Such other and further relief as the court may deem proper.

11

12       **DEMAND FOR JURY TRIAL**

13       Plaintiffs demand a trial by jury.

14  DATED:  October 24, 2016                    HORTON VILLAGE LAW GROUP, APC

15

16

17                                By:  s/ Lincoln V. Horton
                                 LINCOLN V. HORTON
18                               Attorneys for Plaintiffs CHEAP EASY
                                 ONLINE TRAFFIC SCHOOL; BORNA
19                               MOZAFARI AND MARLA KELLER AS
                                 TRUSTEES FOR CHEAP EASY ON-LINE
20                               TRAFFIC SCHOOL PENSION PLAN;
                                 BORNA MOZAFARI AS TRUSTEE FOR
21                               THE CHEAP EASY ON-LINE PROFIT
                                 SHARING PLAN; EASY ON LINE
22                               TRAFFIC SCHOOL.COM, INC.; MARLA
                                 KELLER AS TRUSTEE FOR THE
23                               MARLA KELLER PENSION PLAN AND
                                 MARLA KELLER 401(K) PLAN

24

25

26

27

28