LINCOLN V. HORTON (SBN 165238)
HORTON VILLAGE LAW GROUP, APC
lhorton@hortonvillagelaw.com
16236 San Dieguito Road, Suite 5-24
P.O. Box 9181
Rancho Santa Fe, CA 92067
Telephone: 858.832.8685

Attorneys for Plaintiffs CHEAP EASY ONLINE TRAFFIC
SCHOOL; BORNA MOZAFARI AND MARLA KELLER
AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC
SCHOOL PENSION PLAN; BORNA MOZAFARI AS
TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT
SHARING PLAN; EASY ON LINE TRAFFIC
SCHOOL.COM, INC.; MARLA KELLER AS TRUSTEE
FOR THE MARLA KELLER PENSION PLAN AND
MARLA KELLER 401(K) PLAN

UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEAP EASY ONLINE TRAFFIC SCHOOL; BORNA MOZAFARI AND MARLA KELLER AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN; BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN; EASY ON LINE TRAFFIC SCHOOL.COM, INC.; MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER PENSION PLAN AND MARLA KELLER 401(K) PLAN | Case No. 16-cv-02644 WQH-DHB **FIRST AMENDED COMPLAINT FOR DAMAGES** **1. BREACH OF FIDUCIARY DUTIES ERISA § 404(A)(1), 29 U.S.C. 1104(A)(1)** **2. BREACH OF CONTRACT** **3. PROFESSIONAL NEGLIGENCE** **4. NEGLIGENCE** **5. FRAUD** **6. NEGLIGENT MISREPRESENTATION** |
| Plaintiffs, v. PETER L. HUNTTING & CO., INC.; SMI PENSIONS; SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; ECONOMIC GROUP PENSION SERVICES, INC.; and DOES 1 to 100, inclusive, Defendants. | Judge: Hon. William Q. Hayes Dept. Courtroom 14B (Annex) Magistrate: Hon. David H. Bartick Complaint Filed: October 24, 2016 |

1

Plaintiffs CHEAP EASY ONLINE TRAFFIC SCHOOL; BORNA MOZAFARI AND MARLA KELLER AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN; BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN; EASY ON LINE TRAFFIC SCHOOL.COM, INC.; and MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER PENSION PLAN AND MARLA KELLER 401(K) (singularly "Plaintiff" and collectively "Plaintiffs") hereby file this First Amended Complaint against PETER L. HUNTTING & CO., INC.; SMI PENSIONS; SHEFFLER CONSULTING ACTUARIES INC.; ESTATE OF PETER L. HUNTTING; MIKE EDWARDS; WILLIAM SHEFFLER; ECONOMIC GROUP PENSION SERVICES, INC.; and DOES 1 through 100 (singularly "Defendant" and collectively "Defendants"), and allege as follows:

**THE PARTIES**

1.  Plaintiff CHEAP EASY ONLINE TRAFFIC SCHOOL ("CHEAP") is a California Corporation, which hired Defendant PETER L. HUNTTING & CO, INC. to create the defined benefit plan CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN ("CHEAP PENSION PLAN"), and the CHEAP EASY ON-LINE PROFIT SHARING PLAN ("CHEAP PROFIT SHARING PLAN"), and is the sponsor of both Plans.

2.  Plaintiffs BORNA MOZAFARI and MARLA KELLER AS TRUSTEES FOR THE CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN are individuals and trustees for the CHEAP PENSION PLAN.

3.  Plaintiff BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN is an individual and the trustee of the CHEAP PROFIT SHARING PLAN.

4.  Plaintiff EASY ON LINE TRAFFIC SCHOOL.COM, INC. is a California Corporation, which hired Defendant PETER L. HUNTTING & CO, INC. to create the defined benefit plan MARLA KELLER PENSION PLAN ("KELLER PENSION PLAN"), and the MARLA KELLER 401K PLAN ("KELLER 401K PLAN"), and is the

2

1  sponsor of both Plans.

2  5.  Plaintiff MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER

3  PENSION PLAN is an individual and trustee of the KELLER PENSION PLAN.

4  6.  Plaintiff MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER 401K

5  PLAN is an individual and trustee of the KELLER 401K PLAN.

6  7.  The CHEAP PENSION PLAN, CHEAP PROFIT SHARING PLAN, KELLER

7  PENSION PLAN, and KELLER 401K PLAN will be referred to collectively within this

8  complaint as the "PLANS," and individually in the singular, "PLAN."  The CHEAP

9  PENSION PLAN and the KELLER PENSION PLAN will also be referred to collectively

10  as the "PENSION PLANS."

11  8.  Defendant PETER L. HUNTTING & CO., INC. ("HUNTTING") created,

12  administered and advised Plaintiffs regarding the PLANS until some time after the death

13  of its principal PETER L. HUNTTING.

14  9.  Defendant SHEFFLER CONSULTING ACTUARIES INC. ("SCA") was at all

15  times the actuary that advised Plaintiffs regarding the PLANS.

16  10.  Defendant SMI PENSIONS ("SMI") is the successor to HUNTTING for both

17  assets and liabilities of HUNTTING, as well as the successor administrator who advised

18  Plaintiffs regarding the PLANS.

19  11.  SMI merged with HUNTTING and SCA soon after the death of PETER L.

20  HUNTTING, and each of the companies assumed joint responsibility for the liabilities of

21  the others.

22  12.  Defendant ESTATE OF PETER L. HUNTTING ("ESTATE") is the estate of

23  PETER L. HUNTTING, the deceased principal of HUNTTING.  Plaintiffs proceed

24  against ESTATE pursuant to California Probate Code §§ 550 and 554, for purposes of

25  pursuing insurance proceeds, only; subject to later amendment upon identification of any

26  personal representative of the ESTATE.

27  13.  Defendant MIKE EDWARDS ("EDWARDS") was a HUNTTING

28  employee/principal, then an SMI employee/principal, who participated in the

3

administration of the PLANS, and provided advice to Plaintiffs regarding the PLANS.

14.   Defendant WILLIAM J. SHEFFLER is the principal of SCA and SMI, which succeeded and merged with HUNTTING.

15.   Defendant ECONOMIC GROUP PENSION PLANS, INC. merged with SMI, and assumed joint responsibility for SMI's liabilities.

16.   Defendants DOES 1 through 100, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiffs, and whose true capacities, whether as individuals, corporations, partnerships, joint venturers and/or associations, are also unknown to Plaintiffs, and when such true names are ascertained, the complaint will be amended to include those names. Plaintiffs are informed and believe and thereon allege that, whenever and wherever in this complaint, any Defendants are the subject of any charging allegations by Plaintiffs, said Does are also responsible in some manner for the events and happenings, and it shall be deemed that said Defendants, DOES 1 through 100, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiffs.

17.   At all times pertinent herein, Defendants, and each of them, were the agents, servants, and employees of each of the other Defendants herein, and at the same time and place of the events hereinafter described, were acting within the course and scope of said agency and employment with the permission and consent of the other Defendants and each of them.  Defendants are, and each of them is, successors in interest to the other Defendants.  Defendants are, and each of them is, the alter ego of the other Defendants, and Defendants are essentially the extensions of each other, and jointly responsible for the liabilities of each of the others.   As a result, all causes of action asserted hereunder are asserted as to each and every Defendant.

## **JURISDICTION**

18.  Jurisdiction of this Court arises pursuant to 28 U.S. Code § 1331 because Federal questions are involved; as well as pursuant to ERISA § 502(e)(1) and 29 U.S.C. § 1132(e)(1).

FIRST AMENDED COMPLAINT FOR DAMAGES

19.   Venue is proper under ERISA § 502(e)(2) and 29 U.S.C. § 1132(e)(2) because the PLANS are administered, the breaches took place, and Defendants reside or may be found, in this district.

**GENERAL ALLEGATIONS**

20.   Plaintiffs retained HUNTTING to create and administer the KELLER PENSION PLAN and the KELLER 401K PLAN in 2004, the CHEAP PENSION PLAN in 2005, and the CHEAP PROFIT SHARING PLAN in 2012.

21.   Plaintiffs are not experts regarding defined benefit plans, profit sharing plans, or 401K plans.  PETER L. HUNTTING represented to Plaintiffs that he and HUNTTING and his team (SCA, SMI, SHEFFLER, EDWARDS) were experts in defined benefit plans, profit sharing plans, and 401K plans, when initially selling his services, and throughout his relationship with Plaintiffs.

22.   On or about December 28, 2004, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the KELLER PENSION PLAN, and the KELLER 401K.  HUNTTING also instructed Plaintiffs regarding the amount of the initial contributions to fund each PLAN, and the required offsetting employee compensation to be paid.

23.   HUNTTING created the KELLER PENSION PLAN and KELLER 401K PLAN so that each had an initial effective date of January 1, 2004.

24.   On or about December 23, 2005, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the CHEAP PENSION PLAN.  HUNTTING also instructed Plaintiffs regarding the amount of the initial contribution to fund the PLAN, and any required offsetting employee compensation to be paid.

25.   HUNTTING created the CHEAP PENSION PLAN so that it had an initial effective date of January 1, 2005.

26.   On or about December 14, 2012, HUNTTING obtained a FEIN, created the PLAN documents, the Board resolution and meeting minutes, and prepared and filed all required IRS tax returns and other government filings on behalf of the CHEAP PROFIT SHARING PLAN.   HUNTTING also instructed Plaintiffs regarding the amount of the initial contribution to fund the PLAN, and any required offsetting employee compensation to be paid.

27.   HUNTTING created the CHEAP PROFIT SHARING PLAN so that it had an initial effective date of January 1, 2012.

28.   From the inception of each of the PLANS, HUNTTING retained SCA and SHEFFLER to provide actuarial services for the PLANS and assist HUNTTING with the administration of the PLANS, and advice to Plaintiffs regarding the PLANS. Additionally, HUNTTING and SHEFFLER and the SHEFFLER-related defendants, including SCA and SMI, worked in tandem to provide the administrative services and professional counseling to Plaintiffs regarding all aspects of the PLANS, including but not limited to annual contributions to and termination of the PENSION PLANS.

29.   Consistent with the contractual obligations owed to Plaintiffs and the PLANS, each year PETER L. HUNTTING and EDWARDS for HUNTTING and SHEFFLER for SCA and SMI would perform a review of the investment portfolio and performance for the PENSION PLANS, perform actuarial calculations, and determine the appropriate amount of the annual contributions to the investments for the respective PENSION PLANS, as well as the amount of salary compensation needed to balance the assets and liabilities within the PENSION PLANS.

30.   Plaintiffs relied on HUNTTING's and its team's purported expertise, and each year made the annual employer contributions HUNTTING told Plaintiffs could be made to the investment accounts for the PENSION PLANS.

31.   Over the years, Plaintiffs BORNA MOZAFARI and MARLA KELLER (who have been together as a couple over 30 years, but have been married since December 17, 2014) asked PETER L. HUNTTING about whether if they ever married, the marriage

would cause a financial detriment to the PLANS.  Peter L. Huntting told Plaintiffs repeatedly that no financial detriment would occur to the PLANS if Plaintiffs married.

32.  On November 4, 2014, PETER L. HUNTTING of HUNTTING and Plaintiffs met at PETER L. HUNTTING's invitation to discuss the PENSION PLANS.  No indication was given to Plaintiffs in advance of the meeting that there was any problem with the PENSION PLANS.  However, at the November 4, 2014 meeting, PETER L. HUNTTING informed BORNA MOZAFARI and MARLA KELLER that the PENSION PLANS were both overfunded (PLAN assets exceeded PLAN liabilities), and had to be terminated, immediately.  PETER L. HUNTTING told Plaintiffs that after termination all of the funds in the respective PENSION PLANS had to be rolled over into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, respectively.  It was understood by Plaintiffs that PETER L. HUNTTING's/HUNTTING's recommendations were formed in tandem with EDWARDS, SHEFFLER, SCA and SMI.

33.  Plaintiffs were not aware of the concept of overfunding before the November 4, 2014 meeting with PETER L. HUNTTING, and he did not tell Plaintiffs at that meeting, or any time, the amount of the overfunding of each of the PENSION PLANS.  PETER L. HUNTTING also did not disclose to Plaintiffs that there would be any financial consequences to Plaintiffs or the PLANS due to the overfunding and/or the termination and rollover remedy.  He did not explain that the funds from the terminated PENSION PLANS needed to be rolled over into qualified replacement plans, or any limitations on the amounts that could be rolled over, or that there would be excise taxes and other penalties.  He also did not inform Plaintiffs that non-vested employees would become fully vested and entitled to fully vested distributions as a result of the termination of the PENSION PLANS.  Instead, PETER L. HUNTTING told Plaintiffs that the problem would be fixed by terminating the PENSION PLANS and rolling over all of the proceeds from the PENSION PLANS into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, and that this plan of action needed to be executed, immediately.

34.  Plaintiffs relied upon HUNTTING and its team PETER L. HUNTTING,

1  EDWARDS, SHEFFLER, SCA, and SMI) regarding the need for termination and the

2  remedy, and executed the paperwork that HUNTTING had pre-prepared and presented to

3  them at the November 4, 2014 meeting to begin the termination process.

4      35.  During the November 4, 2014 meeting, Plaintiffs BORNA MOZAFARI and

5  MARLA KELLER also discussed with PETER L. HUNTTING that they were now

6  contemplating a date to get married, but would only proceed if he confirmed that there

7  were not any financial ramifications or consequences to the PLANS.  He told them at the

8  meeting that the marriage would have no financial consequences to the PLANS.

9  Plaintiffs relied upon this representation and prior representations by PETER L.

10  HUNTTING and his team and went forward with their marriage.  Had PETER L.

11  HUNTTING told Plaintiffs that getting married would have an adverse financial effect on

12  the PLANS, Plaintiffs would not have married.

13      36.  On November 4, 2014, PETER L. HUNTTING sent Plaintiffs a letter for each of

14  the PENSION PLANS regarding the overfunding, and his and his team's

15  recommendation to terminate the PENSION PLANS and roll them over into the CHEAP

16  PROFIT SHARING PLAN and the KELLER 401K PLAN.  In his letters, PETER L.

17  HUNTTING states, "it appears that your Plan is at a point where it is fully funded and

18  can no longer absorb any more contributions as it is actually over-funded."  Again, he did

19  not mention the amount of the overfunding of each of the PENSION PLANS, which was

20  well over one million dollars for each PLAN.  He also did not inform Plaintiffs of excise

21  and income taxes owed for the overfunding, the consequences if the funds from the

22  PENSION PLANS were not rolled over into qualified replacement plans, or that non-

23  vested employees would become fully vested and entitled to fully vested distributions as

24  a result of the termination of the PENSION PLANS.

25      37.  On November 5, 2014, PETER L. HUNTTING sent Plaintiffs an email regarding

26  the overfund issue and termination recommendation for the PENSION PLANS.  He did

27  not inform Plaintiffs of the amounts of the overfunding for each of the PENSION

28  PLANS, or the damages and other ramifications to Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES

38.  After the November 4, 2014 meeting, HUNTTING quickly prepared the remaining termination paperwork for the PENSION PLANS and the Plaintiffs executed that paperwork at HUNTTING's instruction.

39.  On December 5, 2014, PETER L. HUNTTING passed on.  Plaintiffs continued to work with HUNTTING's EDWARDS to complete the termination process for the PLANS.  On numerous occasions throughout the process in 2014 and 2015, EDWARDS reiterated PETER L. HUNTTING's advice that the termination of the PENSION PLANS needed to be done.  EDWARDS never revealed the amount of the overfunding of the PENSION PLANS.  EDWARDS never informed Plaintiffs of any consequences, taxes or penalties associated with terminating the PENSION PLANS and rolling over all of the proceeds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K.

40.  In communications with EDWARDS about the terminations of the PENSION PLANS, after PETER L. HUNTTING's death, Plaintiffs relayed to EDWARDS that they were getting married on December 17, 2014, and were doing so, specifically, in reliance upon PETER L. HUNTTING's advice that the marriage would not have adverse financial impact on the PLANS.  EDWARDS failed to tell Plaintiffs that the marriage would cause a financial consequence to the PLANS.

41.  In mid-December 2014, almost 2.4 million dollars was rolled over from the terminated KELLER PENSION PLAN to the KELLER 401K.

42.  After the KELLER PENSION PLAN termination and rollover, EDWARDS and HUNTTING continued to recommend the termination of, and work on the termination paperwork for, the CHEAP PENSION PLAN.

43.  On March 6, 2015, EDWARDS informed Plaintiffs that he was now with SMI.

44.  On or about May 14, 2015, Plaintiffs met with SHEFFLER and EDWARDS OF SMI about the termination of the PENSION PLANS.  SHEFFLER and EDWARDS continued to recommend the termination of the PENSION PLANS as an appropriate fix, but did not reveal the amount of the overfunding of the PENSION PLANS, provide other potential options, or explain the financial consequences which the terminations and

1    rollover would cause.

2        45.   On or about July 7, 2015, as supplemented with later issued dividends, a total of

3    almost 3 million dollars was rolled over from the CHEAP PENSION PLAN to the

4    CHEAP PROFIT SHARING PLAN.

5        46.   On October 14, 2015, EDWARDS sent an email to Plaintiffs in which there is a

6    vague reference "additional benefits" needed in the CHEAP PENSION PLAN to pass

7    IRS non-discrimination testing, and the need to issue "revised reports" to the IRS

8    regarding the "additional benefits."  The "additional benefits" were Qualified Non-

9    Elective Benefits ("QNECs"), the payment of which was necessitated by the controlled

10   group created by the marriage of the Plaintiffs BORNA MOZAFARI and MARLA

11   KELLER, which Plaintiffs had previously been informed by Defendants would not cause

12   any financial detriment to the PLANS.  Plaintiffs did not understand the reference to

13   these "additional benefits" in the email, but since EDWARDS claimed it was "good

14   news," they were not concerned.

15       47.   On December 18, 2015, SMI employee Elizabeth Buckles sent Plaintiffs an email

16   wherein for the first time in any communication from Defendants, Plaintiffs were

17   informed of an amount of a PENSION PLAN overfund (per Defendants).  The amount of

18   the overfunding in the CHEAP PENSION PLAN rolled over to the CHEAP PROFIT

19   SHARING PLAN was stated by Ms. Buckles to be "$902,803."  Ms. Buckles also

20   informed Plaintiffs in this email that there would be at least a "20% excise tax" owed on

21   this overfunded amount, if a "50% excise tax" could somehow be avoided.  There was no

22   mention by Ms. Buckles of the additional income taxes, interest and penalties that would

23   also be owed on the overfunding for each PLAN.

24       48.   Plaintiffs were shocked by the information in Elizabeth Buckle's December 18,

25   2015 email, and contacted Ms. Buckles by phone, during which she informed Plaintiffs

26   that the MARLA KELLER PENSION PLAN that had been rolled over into the MARLA

27   KELLER 401K was also overfunded by over $900,000.

28       49.   Plaintiffs contend that each of the PENSION PLANS was overfunded by well

                                            10

over a million dollars.  As instructed by Defendants, 100% of the funds in each PENSION PLAN, including all of the overfunding for each, was rolled over into the CHEAP PROFIT SHARING PLAN and the MARLA KELLER 401K, upon the termination of the PENSION PLANS.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

## ERISA 404(a)(1), 29 U.S.C. § 1104(a)

(Against All Defendants)

50.  Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 49 above, as though fully set forth herein.

51.  Plaintiffs are entitled to bring this action as fiduciaries for the PLANS pursuant to 29 U.S.C. 1132(a)(2).

52.  Defendants are each fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and 26 U.S. Code § 4975(e)(3) because each exercised discretionary authority and control in the administration and management of the PLANS; the creation of the annual reviews of the PLANS, and evaluation of the investments of the PLANS; in determinations regarding the appropriate amount of annual employer contributions for the investments of the PLANS and salary offsets needed; and in the determination that the PENSION PLANS must be terminated and rolled over into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, respectively.

53.  ERISA imposes strict fiduciary duties upon Defendants as plan fiduciaries. ERISA § 404(a)(1)(B) and 29 U.S.C. § 1104(a)(1)(B) states, in relevant part, that a plan fiduciary must discharge his/its duties with "care, skill, prudence and diligence…"

54.  ERISA § 409(a) and 29 U.S.C. § 1109(a) state, in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to made good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable

11

or remedial relief as the court may deem appropriate…

55.  Defendants breached their fiduciary duties, to Plaintiffs and the PLANS, to act with "care, skill, prudence and diligence…" by continuing to instruct Plaintiffs to make six-figure annual contributions to the pension PLAN for several years despite the PENSION PLANS being overfunded.

56.  Defendants breached their fiduciary duties to Plaintiffs and the PLAN by failing to adequately assess the PLAN's investments, performing incorrect actuarial calculations or failing to perform such calculations, not taking into account pertinent tax codes and statutory sections when advising Plaintiffs about the PLAN, all resulting in improper advice to Plaintiffs and overfunding of the PENSION PLANS in an amount over one million dollars for each PLAN.

57.  Defendants breached their fiduciary duties to Plaintiffs and the PLANS by attempting to cover up the amount of the overfunding of the PENSION PLANS, the consequences of the overfunding, and then instructing Plaintiffs erroneously that the termination of the PENSION PLANS and rolling the proceeds over into the CHEAP PROFIT SHARING PLAN and the KELLER 401K would correct the overfund issue, in an attempt to cover up their own liabilities.  Instead, the termination of the PENSION PLANS and rollover into the CHEAP PROFIT SHARING PLAN and the KELLER 401K PLAN created excise and income tax damages of over a million dollars for each PLAN for violation of Internal Revenue Code § 4980(d)(2) for Qualified Replacement Plans, and making it impossible to correct and absorb the overfunding from each PENSION PLAN within the seven years time period allowed by the IRS.  Termination of the PENSION PLANS also made non-vested employees fully vested, requiring full distributions of benefits to employees who would not have been entitled to such benefits absent Defendants' erroneous advice to terminate the PENSION PLANS.

58.  Defendants breached their fiduciary duties to Plaintiffs by failing to advise them that their marriage creating a controlled group would cause damages to the PLANS in the form of a responsibility for payment of Qualified Non-Elective Contributions ("QNECs")

by KELLER 401K for CHEAP employees.

59.   After Peter L. Huntting's death, when Defendant SMI took over the administration of the Plans, Defendant's SMI, Edwards, and ultimately Economic Group (when it merged with SMI) continued to breach the fiduciary duties of each by continuing to advise Plaintiffs to continue to terminate the Plans; not advising Plaintiffs to stop or reverse the Plan terminations; failing to advise of the amount of the overfunding of the Plans; and failing to advise and mitigate the monetary consequences to Plaintiffs of the overfunding and terminations of Plans.  SMI and the related defendants also caused further damages to Plaintiffs by miscalculating the amount of benefits to be paid to the now vested employees from the proceeds of the terminated PENSION PLANS.

60.   As a result of Defendants' breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the overfunded amounts, and the rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding over one million dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS (and which Defendants also miscalculated in the employees' favor); lost profits from investments foregone and other business ventures that overfund amounts would have been used to finance; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

61.   Additionally, Plaintiffs are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

62.   Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

(Against All Defendants)

63.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 62 above, as though fully set forth herein.

64.   Plaintiffs contracted with Defendant HUNTTING on or about December 28, 2004, December 23, 2005, and December 14, 2012 to create, manage and administer the PLANS in compliance with the documents for each PLAN and applicable statutes and code sections.  Among HUNTTING's duties owed Plaintiffs and the PLANS pursuant to the agreements were to annually review the PENSION PLANS' investments, in conjunction with the PENSION PLANS' documents and applicable tax statutes; perform actuarial calculations to determine and instruct Plaintiffs regarding the appropriate annual employer contribution to the investments for each of the PENSION PLANS, and any salary/compensation offsets needed; and advise Plaintiffs regarding the termination of the PLANS.

65.   Defendants HUNTTING breached its duties to Plaintiffs and the PLANS by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the PENSION PLANS for years after the PENSION PLANS became overfunded.

66.   Defendant HUNTTING breached its duties to Plaintiffs and the PLAN by instructing Plaintiffs to terminate the PENSION PLANS due to the overfunding created by Defendants and rollover all proceeds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K in violation of the Qualified Replacement Plan requirements codified in 26 U.S.C. § 4980(d)(2); failing to advise Plaintiffs of the excise tax, income tax, penalties, interest, and employee vesting consequences of termination of the PENSION PLANS; and erroneous advice about the purported non-effect of Plaintiffs' marriage on the PLANS.

67.   Plaintiffs contracted with SMI on or about May 14, 2015 to manage and administer the PLANS in compliance with the documents for each PLAN and applicable

14

statutes and code sections and Plaintiffs regarding the PENSION PLANS' terminations and rollovers.

68.   SMI breached its duties to Plaintiffs by failing to advise Plaintiffs about the consequences of the termination and rollover plan; failing to advise Plaintiffs to reverse/stop the termination of the PENSION PLANS and rollovers into the CHEAP PROFIT SHARING PLAN and the KELLER 401K in violation of the Qualified Replacement Plan requirements codified in 26 U.S.C. § 4980(d)(2); and failing to advise Plaintiffs of the employee vesting consequences of termination of the PENSION PLANS, and also miscalculating the employee distribution amounts owed.

69.   Each of the Defendants is the alter ego, agent, servant, or successor to the other Defendants. Therefore, the aforementioned breaches of any Defendant are breaches of all of the Defendants.

70.   As a result of Defendants' breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the overfunded amounts, and the rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding one million dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS (which were also miscalculated by Defendants in favor of the employees); lost profits from investments foregone and other business ventures that overfund amounts would have been used to finance; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

71.   Additionally, Plaintiffs are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

72.   Plaintiffs seek and are entitled to recover a judgment for damages according to

15

1  proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and

2  further relief, as the court deems proper.

### THIRD CAUSE OF ACTION

### PROFESSIONAL NEGLIGENCE

5  (Against All Defendants)

6  73.  Plaintiffs incorporate by reference each and every allegation contained in the

7  paragraphs 1 through 72 above, as though fully set forth herein.

8  74.  Defendants are all professionals in the business of managing, administering,

9  creating and/or performing actuarial services for defined benefit plans, profit sharing

10  plans, and 401K plans, and performed those functions for the Plaintiffs and the PLANS.

11  75.  Defendants owed duties of care to Plaintiffs and the PLANS to act pursuant to

12  the standard of care for reasonably careful professionals in the retirement and benefit plan

13  industry.  Specifically, Defendants' duties to Plaintiffs included, but were not limited to,

14  proper assessment of the PLANS, their investments, and statutory requirements, and

15  performance of proper actuarial calculations, so as to advise Plaintiffs regarding the

16  appropriate annual employer contribution to the investments for the PLANS and any

17  salary off-sets needed; making sure the PLANS and the funding in each complied with

18  applicable statutes and revenue codes, as well as the PLAN documents; provide proper

19  advice regarding termination of the PLANS, or other appropriate solutions to any

20  problems which arose with the PLANS; and generally, not to cause harm or damages to

21  Plaintiffs and the PLANS by Defendants' acts and omissions.

22  76.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the

23  standard of care for reasonably careful professionals in the retirement and benefit plan

24  industry, by continuing to instruct Plaintiffs to make six-figure annual employer

25  contributions to the investments for the PENSION PLANS for years after the PENSION

26  PLANS became overfunded.

27  77.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the

28  standard of care for reasonably careful professionals, by making numerous actuarial

16

1   calculation errors and not taking into account pertinent statutory code sections such as

2   IRC Section 401(a)(17) in calculating and instructing Plaintiffs regarding the amount of

3   the annual employer contribution to the investments for the PENSION PLANS.

4       78.   Defendants breached their duties to Plaintiffs, and fell below the standard of care

5   for reasonably careful professionals, by advising Plaintiffs that they must terminate the

6   PENSION PLANS because of the overfunding issue caused by Defendants (which was

7   not the proper solution), and rollover all of the balances from the PENSION PLANS into

8   the other PLANS (which violated 26 U.S.C. § 4980(d)(2), and other applicable statutes).

9       79.   Defendants breached their duties to Plaintiffs, and fell below the standard of care

10   for reasonably careful professionals, by failing to advise them that termination of the

11   PENSION PLANS would cause non-vested employees to become fully vested, and

12   entitled to payment of full distributions (and then miscalculating those distributions).

13       80.   Defendants breached their duties to Plaintiffs, and fell below the standard of care

14   for reasonably careful professionals, by failing to advise them of the financial

15   ramifications of the MOZAFARI-KELLER potential marriage, and resulting creation of a

16   controlled group, on the PLANS.

17       81.   Each of the Defendants is the alter ego, agent, servant, or successor in interest to

18   the other Defendants.  Therefore, the aforementioned breaches of any Defendant are

19   breaches of all of the Defendants.

20       82.   After Peter L. Huntting's death, when Defendant SMI took over the

21   administration of the Plans, Defendant's SMI, Edwards, and ultimately Economic Group

22   (when it merged with SMI) breached the duties owed by each to Plaintiffs, and fell below

23   the standard of care for reasonably careful professionals, by continuing to advise

24   Plaintiffs to continue to terminate the Plans; not advising Plaintiffs to stop or reverse the

25   Plan terminations; failing to advise of the amount of the overfunding of the Plans; and

26   failing to advise and mitigate the monetary consequences to Plaintiffs of the overfunding

27   and terminations of Plans; and miscalculating the employee distributions owed based on

28   the erroneously advised termination of the PENSION PLANS.

83. As a result of Defendants' breaches, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the overfunded amounts, and the rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but over a million dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS (which were also miscalculated by Defendants); lost profits from investments foregone and other business ventures that overfund amounts would have been used to finance; pain and suffering as to the individual Plaintiffs; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

84. Additionally, Plaintiffs have been damaged and are entitled to recover fees paid to Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

85. Plaintiffs seek and are entitled to recover a judgment for damages according to proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and further relief, as the court deems proper.

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE**

(Against All Defendants)

86. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 85 above, as though fully set forth herein.

87. Defendants are all professionals in the business of managing, administering, creating and/or performing actuarial services for defined benefit plans, profit sharing plans, and 401K plans, and performed those functions for the Plaintiffs and the PLANS.

88. It is foreseeable that harm would be caused to Plaintiffs and the PLANS by Defendants' acts or omissions. As such, Defendants owed duties of care to Plaintiffs and

18

the PLANS to act pursuant to the reasonable person standard.  Specifically, Defendants' duties to Plaintiffs included, but were not limited to, proper assessment of the PLANS, their investments, and statutory requirements, and performance of proper actuarial calculations, so as to advise Plaintiffs regarding the appropriate annual employer contribution to the PLANS and any salary offsets needed; making sure the PLANS and the funding in each complied with applicable statutes and revenue codes, as well as the plan documents; provide proper advice regarding termination of the PLANS, or other appropriate solutions to any problems which arose with the PLANS; and generally, not to cause harm or damages to Plaintiffs and the PLANS by Defendants' acts and omissions.

89.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the standard of care for a reasonable person, by continuing to instruct Plaintiffs to make six-figure annual employer contributions to the investments for the PENSION PLANS for years after the PENSION PLANS became overfunded.

90.  Defendants breached their duties to Plaintiffs and the PLANS, and fell below the standard of care for reasonably careful professionals, by making numerous actuarial calculation errors and not taking into account pertinent statutory code sections such as IRC Section 401(a)(17) in calculating and instructing Plaintiffs regarding the amount of the annual employer contribution to the investments for the PENSION PLANS.

91.  Defendants breached their duties to Plaintiffs by advising Plaintiffs that they must terminate the PENSION PLANS because of the overfunding issue caused by Defendants (which was not the proper solution), and rollover all of the balances from the PENSION PLANS into the other PLANS (which violated 26 U.S.C. § 4980(d)(2), and other applicable statutes).

92.  Defendants breached their duties to Plaintiffs by failing to advise them that termination of the PENSION PLANS would cause non-vested employees to become fully vested, and entitled to payment of full distributions (and then miscalculating those distributions).

93.  Defendants breached their duties to Plaintiffs by failing to advise them of the

19

1   financial ramifications of the MOZAFARI-KELLER potential marriage, and resulting

2   creation of a controlled group, on the PLANS.

3   94.   Each of the Defendants is the alter ego, agent, servant or successor in interest to

4   the other Defendants.  Therefore, the aforementioned breaches of any Defendant are

5   breaches of all of the Defendants.

6   95.   After Peter L. Huntting's death, when Defendant SMI took over the

7   administration of the Plans, Defendant's SMI, Edwards, and ultimately Economic Group

8   (when it merged with SMI) breached the duties owed by each to Plaintiffs to act

9   reasonably to avoid foreseeable harm, by continuing to advise Plaintiffs to continue to

10  terminate the Plans; not advising Plaintiffs to stop or reverse the Plan terminations;

11  failing to advise of the amount of the overfunding of the Plans; and failing to advise and

12  mitigate the monetary consequences to Plaintiffs of the overfunding and terminations of

13  Plans; and miscalculating the employee distributions owed based on the erroneously

14  advised termination of the PENSION PLANS.

15  96.   As a result of Defendants' breaches, and others which will be established

16  according to proof, Plaintiffs have and will continue to incur damages, including payment

17  of IRS excise taxes, income taxes, penalties, and interest for the overfunded amounts, and

18  the rollover amounts in violation of Qualified Replacement Plan requirements and

19  allowances, in amounts according to proof but exceeding one million dollars for each

20  PLAN; payment of extra QNECs as a result of the controlled group; distributions to

21  employees who became fully vested as a result of the termination of the PENSION

22  PLANS (which were also miscalculated by Defendants in the employees' favor); lost

23  profits from investments foregone and other business ventures that overfund amounts

24  would have been used to finance; pain and suffering as to the individual Plaintiffs; new

25  PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs;

26  court costs; and related damages.

27  97.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid

28  to Defendants, including annual fees for management, administration and actuarial fees

20

1   for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended

2   terminations of the PENSION PLANS and rollovers, and related distributions and filings.

3       98.   Plaintiffs seek and are entitled to recover a judgment for damages according to

4   proof, attorneys' and experts' fees and costs, interest, costs of suit, and such other and

5   further relief, as the court deems proper.

6                          **FIFTH CAUSE OF ACTION**

7                                  **FRAUD**

8                          (Against all Defendants)

9       99.   Plaintiffs incorporate by reference each and every allegation contained in the

10  paragraphs 1 through 98 above, as though fully set forth herein.

11      100.   Defendant HUNTTING, through its principal PETER L. HUNTTING, omitted to

12  tell Plaintiffs both the amount of the PENSION PLANS overfund Defendants had caused,

13  as well as the consequences to Plaintiffs and the PENSION PLANS, during his meeting

14  with Plaintiffs on November 4, 2014, and in subsequent communications (including

15  letters from him dated November 4, 2014 and a November 5, 2014 email), even though,

16  and because, he knew that those facts would be material to Plaintiffs.  At the November

17  4, 2014 meeting, and in subsequent communications. PETER L. HUNTTING advised

18  Plaintiffs that the overfund problem could be fixed by terminating the PENSION PLANS

19  and rolling over all of the proceeds into the CHEAP PROFIT SHARING PLAN and

20  KELLER 401K PLAN, when, in fact, he knew that the representation was false, and

21  intended that the Plaintiffs would rely upon it.  PETER L. HUNTTING made the

22  misrepresentations with the intent to deceive Plaintiffs and induce Plaintiffs' reliance,

23  resulting in extra fees to HUNTTING, and furthering HUNTTING/PETER L.

24  HUNTTING's attempts to avoid litigation, liability, and damage to the reputation of

25  each.

26      101.   Defendant EDWARDS continued the ruse by concealing from Plaintiffs the

27  amount of the overfunding of each of the PENSION PLANS throughout his interactions

28  with them in late 2014 and throughout 2015, including, but not limited to, during the

21

1   meeting with Plaintiffs and SHEFFLER on or about May 14, 2015, and insisting to

2   Plaintiffs that the termination of the PENSION PLANS and rollover to the other PLANS

3   would fix the problem, even though he knew that the terminations and rollovers would

4   not fix the problem.  EDWARDS also concealed from Plaintiffs that the controlled group

5   caused by their marriage had resulted in damages to the PLANS.  He made the

6   aforementioned statements and omissions knowing the issues were material to Plaintiffs,

7   and with the intent to deceive Plaintiffs, and have Plaintiffs rely upon his

8   misrepresentations.  EDWARDS made the misrepresentations to Plaintiffs to try to avoid

9   litigation, liability, damage to reputation, and justify the fees charged for terminations

10  and rollovers.

11      102.   SHEFFLER on behalf of himself, SCA, and SMI concealed the amounts of the

12  overfunding of the PENSION PLANS, and insisted that the termination and rollover fix

13  was appropriate, knowing that the statements were false, and that the information would

14  be material, during his May 14, 2015 meeting with Plaintiffs and other communications

15  made during the termination and rollover process.  The aforementioned communications

16  and omissions were made by SHEFFLER with the intent deceive Plaintiffs, and have

17  them rely on the statements and omissions, in order to try to avoid litigation, liability, and

18  damage to his reputation and the reputation of his companies, and justify fees charged for

19  the terminations and rollovers.

20      103.   Defendants conspired with one another to conceal the amount of the overfunding

21  from Plaintiffs, and misrepresent the nature and consequences of the termination and

22  rollover fix, to deceive Plaintiffs, in order to generate fees, avoid liability, and avoid

23  damage to their respective reputations.  Defendants' misrepresentations were made solely

24  for reasons of self-interest, and in complete, callous, malicious, and utter disregard of the

25  consequences to Plaintiffs and the PLANS.

26      104.   As laypersons with regard to retirement and benefit plans, Plaintiffs reasonably

27  relied upon the intentional misrepresentations of purported experts PETER L.

28  HUNTTING and EDWARDS, on behalf of themselves and HUNTTING, and then

SHEFFLER and EDWARDS, on behalf of themselves, SCA and SMI, to continue paying for the services related to the erroneous termination of the PENSION PLANS and rollovers, and Defendants' administration, management, and advice regarding the PLANS.

105.   As a result of Defendants' intentional misrepresentations, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the overfund amounts, and rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding one million dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS (which were also miscalculated by Defendants in the employees' favor); pain and suffering as to the individual Plaintiffs; lost profits from investments foregone and other business ventures that overfund amounts would have been used to finance; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

106.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

107.   Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, punitive damages, interest, costs of suit, and such other and further relief as the court deems proper.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

(Against all Defendants)

108.   Plaintiffs incorporate by reference each and every allegation contained in the paragraphs 1 through 107 above, as though fully set forth herein.

109.   Defendants instructed Plaintiffs that six-figure annual employer contributions to the PENSION PLANS were appropriate for several years after the PENSION PLANS could accept no more funding because, for each, the assets exceeded the obligations.

110.   Defendants failed to inform Plaintiffs that if they married, the marriage and the resulting controlled group would have a detrimental financial impact on the PLANS, including the requirement of payments of additional QNECs.

111.   Defendants instructed Plaintiffs to terminate the PENSION PLANS and rollover all of the funds into the CHEAP PROFIT SHARING PLAN and the KELLER 401K, and that the termination and rollover fix would remedy the overfund issue without damages to Plaintiffs.

112.   Defendants intended that Plaintiffs rely upon the above representations and omissions.

113.   Defendants knew or should have known at the time that they made the above statements or omissions, that the statements or omissions were false.  Defendants should have known long before they informed Plaintiffs that the PENSION PLANS were overfunded; that the controlled group which would result from marriage by Plaintiffs would cause financial consequences to Plaintiffs and the PLANS; and that rather than fixing the problem, the termination of the PENSION PLANS and rollover of all of the funds to the other PLANS would cause Plaintiffs over two million dollars in damages in excise taxes, income taxes, interest and penalties because the overfunding could not be corrected within the requisite seven years, violation of 26 U.S.C. 4980(d)(2), among other statutes, and damages caused by making non-vested employees fully vested and entitled to full distributions from the terminated PENSION PLANS (and which the Defendants also misc.

114.   Plaintiffs reasonably relied upon the representations of Defendants HUNTTING, ESTATE and EDWARDS about annual employer contributions, and the lack of impact of Plaintiffs' marriage on the PLANS, because Plaintiffs are laypersons with regard to retirement and benefit plans and Defendants were professed experts hired to administer,

24

manage and advise Plaintiffs regarding the PLANS.  Plaintiffs reasonably relied upon the representations and omissions of Defendants HUNNTING, PETER L. HUNTTING ("ESTATE"), EDWARDS, SHEFFLER, SCA and SMI regarding the erroneously asserted appropriateness of the instructed termination and rollover fix because Plaintiffs are laypersons with regard to retirement and benefit plans and Defendants were professed experts hired to administer, manage and advise Plaintiffs regarding the PLANS.

115.   As a result of Defendants' negligent misrepresentations, and others which will be established according to proof, Plaintiffs have and will continue to incur damages, including payment of IRS excise taxes, income taxes, penalties, and interest for the overfund amounts, and rollover amounts in violation of Qualified Replacement Plan requirements and allowances, in amounts according to proof but exceeding one million dollars for each PLAN; payment of extra QNECs as a result of the controlled group; distributions to employees who became fully vested as a result of the termination of the PENSION PLANS (which were also miscalculated in favor of employees); lost profits from investments foregone and other business ventures that overfund amounts would have been used to finance; pain and suffering as the individual Plaintiffs; new PLAN administrator's fees; attorneys', accountants' and PLAN experts' fees and costs; court costs; and related damages.

116.   Additionally, Plaintiffs have been damaged and are entitled to recover fees paid Defendants, including annual fees for management, administration and actuarial fees for the PLANS, as well as the fees paid by Plaintiffs for the erroneously recommended terminations of the PENSION PLANS and rollovers, and related distributions and filings.

117.   Plaintiffs seek and are entitled to recover a judgment for damages, according to proof, interest, costs of suit, and such other and further relief as the court deems proper.

WHEREFORE, Plaintiffs pray for judgment in its favor and against Defendants for the following:

1.   Damages according to proof at trial;

25

    2.  Pain and suffering;

    3.  Punitive damages;

    4.  Attorneys' and experts' fees and costs per ERISA §§ 409(a), 502(g) and 29 U.S.C. §§ 1109(a), 1132(g);

    5.  Prejudgment and post-judgment interest;

    6.  Costs of suit;

    7.  Such other and further relief as the court may deem proper.


**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.


DATED:  September 7, 2017              HORTON VILLAGE LAW GROUP, APC


                                        By:  /s/ Lincoln V. Horton
                                        LINCOLN V. HORTON
Attorneys for Plaintiffs CHEAP EASY ONLINE TRAFFIC SCHOOL; BORNA MOZAFARI AND MARLA KELLER AS TRUSTEES FOR CHEAP EASY ON-LINE TRAFFIC SCHOOL PENSION PLAN; BORNA MOZAFARI AS TRUSTEE FOR THE CHEAP EASY ON-LINE PROFIT SHARING PLAN; EASY ON LINE TRAFFIC SCHOOL.COM, INC.; MARLA KELLER AS TRUSTEE FOR THE MARLA KELLER PENSION PLAN AND MARLA KELLER 401(K) PLAN